UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:08 CR 533 CAS |
| | ) | DDN |
| ANTWAIN SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the court on the motion of defendant Antwain Smith to suppress evidence. (Doc. 28.) This motion was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). A hearing was held on the motion on November 7, 2008.

Defendant Smith argues that his statements and the physical evidence seized at the time of his arrest should be suppressed. From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law.

**FACTS**

1. Shortly before 11:00 p.m., on August 30, 2008, St. Louis Metropolitan Police Officers Mark Wasem, Thomas Favazza, and Stephen Kaiser, were on uniform patrol as members of the Mobile Reserve in the Jeff-Vander-Lou area of the City of St. Louis. The Mobile Reserve unit is charged with patrolling the high crime areas of the city, such as the Jeff-Vander-Lou area.[1] At that time, as they drove in a marked police vehicle in the vicinity of the intersection of Glasgow and Palm Streets, Officer Wasem met with a citizen[2] who told the officer that he had just been at the intersection of Garrison and Hebert Streets, near the 2900

---

[1] Officers Wasem, Favazza, and Kaiser knew that there had recently been several shootings in that area and that criminal gangs existed there.

[2] The citizen did not give the officer his/her name or address. The officer had never seen the citizen before or after the incident.

block of Hebert, and saw a man there known as "Red Rag" with what the citizen described as a "machine gun" under the man's white tee shirt. Officer Wasem questioned the citizen for several minutes. The citizen provided the officers with a physical description of the subject; the description included the fact that the man wore a white tee shirt and blue jean shorts and had a red bandanna in his back pocket. With this information the officers went to the intersection of Garrison and Hebert, near the 2900 block of Hebert.[3]

    2.    Three or four minutes later, at approximately 11:00 p.m., as the officers drove into the area, they saw an individual standing alone in the street in front of 2936 Hebert, a vacant residential building.[4] The area was illuminated by a street light at the nearby intersection. The officers saw that the man fit the physical description provided by the citizen. Officer Wasem decided to contact the subject. As soon as he saw the police, the man, later identified as defendant Antwain Smith, began walking away from them, continually looking over his shoulder at the officers as he walked. This action appeared suspicious to the officers. The officers also saw that the man had a red bandanna in his rear pocket. They stopped the police vehicle and got out. When Smith saw the officers alight from the vehicle, he grabbed the front of his shirt at his abdomen and ran down a nearby gangway between two buildings. The grabbing of his shirt front and running away indicated to the officers that the subject likely had a weapon.

    3.    The officers chased the man down the gangway, into an alley near a vacant building, and ultimately into an area strewn with debris, which made running difficult.[5] As he chased Smith, Officer Wasem saw him try to throw away what he was clutching, which the officer believed was a weapon. During the chase, Officer Wasem yelled several times to the man to stop running and to show his hands, but Smith did not do so. As

---

[3]The officers knew there had been reports to the police of "shots fired" and narcotics activities at this location.

[4]See Government Exhibits 1 and 2 (photos).

[5]See Government Exhibit 3 (aerial photo).

he ran, Antwain Smith lost his footing and was tackled by Officer Wasem. On the ground, Smith had both hands under his body with Officer Wasem on top of him. Wasem yelled to the other officers that the man had a gun. Smith struggled with Officer Wasem until the other officers arrived and he was subdued. Smith was handcuffed and sat upright.

    4.    Officer Wasem arrested Smith for failing to comply with the officer's directions and for resisting arrest. Seeing a shoestring looped around Smith's neck, Wasem took it from Smith and found it was secured at one end to the muzzle of a firearm and at the other end to the rear sight-end of the weapon. The shoestring functioned like a sling for the weapon, which the man hung around his neck. Officer Kaiser seized the firearm.[6]

    5.    After his arrest, Antwain Smith became cooperative with the officers. He did not appear intoxicated. Smith was put in a patrol car where Officer Favazza orally advised him of his constitutional rights to remain silent and to counsel. After the rights had been read to him, without being asked any question, Smith said, "Yeah, you've got me." Because there had been a physical altercation in the arrest, the officers summoned an Emergency Medical Technician unit which took Smith to the hospital. At the hospital, Smith made general small talk with Officer Favazza. In their conversation, Smith told Favazza that he was a rapper who had a show to perform the next evening. These and other statements he made to the police were appropriate to the questions. No threat or promise was made to him to induce him to make any statement or to cooperate.

## DISCUSSION

### A. Fourth Amendment Issues

The Fourth Amendment to the Constitution protects an individual from unreasonable searches and seizures. U.S. Const. amend. IV. If a police officer has a reasonable suspicion that criminal activity is afoot, the officer may briefly stop the individual to conduct a reasonable inquiry

---

[6] By that time, three other officers, including a supervisory sergeant, arrived on the scene.

aimed at confirming or dispelling the suspicion. United States v. Hughes, 517 F.3d 1013, 1016 (8th Cir. 2008) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). A Terry stop may also be justified if the officer has reasonable suspicion that a crime was previously committed by the individual. Id. An officer conducting an investigative stop, or Terry stop, is limited to searching the individual's outer clothing for weapons. United States v. Bailey, 417 F.3d 873, 876 (8th Cir. 2005).

An investigative stop is governed by the reasonable suspicion standard – and not the probable cause standard governing arrests. Id. "An officer's suspicion is reasonable if he knows particularized, objective facts that lead to a rational inference that a crime is being or has been committed." United States v. Gannon, 531 F.3d 657, 661 (8th Cir. 2008). Reasonable suspicion, however, is more than an inarticulable hunch; it must be based on specific and articuable facts, which taken together with rational inferences, support the stop. Id. The totality of the circumstances determines whether the particular facts known to the officer amount to an objective and particularized basis for reasonable suspicion. Id. Factors to consider include the time of day, the number of people in the area, the character of the neighborhood, whether the officers are in uniform, the way the runner was dressed, the direction and speed of the flight, and whether the person's behavior was otherwise unusual. Illinois v. Wardlow, 528 U.S. 119, 129-30 (2000) (Stevens, J., concurring in part and dissenting in part). These factors are viewed from the perspective of the officer, who is trained to cull significance from behavior that would appear innocent to the untrained observer. Gannon, 531 F.3d at 661.

In this case, the officers' investigative stop was justified by reasonable articulable suspicion. The officers were patrolling at night, in a high crime area, in a marked car. See Wardlow, 528 U.S. at 124 ("[T]he fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a Terry analysis."). An individual met with the officers, and provided them with information about, and a physical description of, a man known as "Red Rag." In a matter of minutes, the police were able to verify this information, spotting an individual matching "Red Rag's" physical description at the identified

location.  See United States v. Bell, 480 F.3d 860, 863 (8th Cir. 2007) (noting that reasonable suspicion may be based on an informant's tip where the tip is both reliable and corroborated).  When the police pulled up near Smith, he grabbed his shirt, suggesting he might have a weapon, and began running.  See Wardlow, 528 U.S. at 124 ("Headlong flight . . . is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."); see also Bailey, 417 F.3d at 876 (noting that the suspect positioned his body away from the officer, suggesting he might be concealing contraband or a weapon).  Smith ran into an alley near a vacant building, and did not stop running when directed by the officer.  See United States v. Amaker, 233 F. App'x 238, 239 (4th Cir. 2007) (unpublished per curiam) (finding police had reasonable suspicion to stop a woman, after she began running down a dark alley, in a high crime area).  Looking to the totality of the circumstances, the officers had a reasonable articulable suspicion that criminal activity was afoot.  The officers were therefore justified in investigating further.

In the course of stopping and subduing Smith, Officer Wasem noticed that he had a gun.  He properly seized the weapon out of concern for his personal safety.  See Bell, 480 F.3d at 864 (holding that officers may take steps reasonably necessary to protect their personal safety); United States v. Malachesen, 597 F.2d 1232, 1234 (8th Cir. 1979) (holding that seizure of handgun was reasonable precaution to assure the officers' personal safety).

### B.  Fifth Amendment Issues

The Fifth Amendment to the Constitution protects an individual from being compelled to be a witness against himself in a criminal case. U.S. Const. amend. V.  To safeguard an individual's Fifth Amendment rights, a suspect in custody must be warned before being interrogated that he has the right to remain silent and that any statement he makes may be used against him.  Miranda v. Arizona, 384 U.S. 436, 444 (1966).  The safeguards described in Miranda only apply when a suspect is in custody. Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (per curiam).  Statements made after a knowing and voluntary waiver of Miranda rights are admissible unless there were earlier, unwarned statements resulting from

coercion or a calculated effort to undermine the suspect's free will. United States v. Briones, 390 F.3d 610, 614 (8th Cir.2004).

In this case, Smith made statements after Officer Favazza advised him of his Miranda rights. These statements constituted a waiver of his rights. See North Carolina v. Butler, 441 U.S. 369, 372-76 (1979). At the time of the waiver, Smith was not the subject of any threats or promises. His statements were made voluntarily and responsively, and were not induced by any improper government action. See United States v. LeBrun, 363 F.3d 715, 724 (8th Cir.2004) (en banc). Accordingly, Smith's statements to the officers in the patrol car and at the hospital may be used against him without violating his Fifth Amendment rights.

Smith's statement that "Yeah, you've got me," is also admissible as a volunteered statement. See Rhode Island v. Innis, 446 U.S. 291, 299-300 (1980). Smith volunteered that statement without being asked a question, and "[v]olunteered statements . . . are not barred by the Fifth Amendment and their admissibility is not affected by [Miranda]." Id. at 300.

The motion to suppress should be denied.

### RECOMMENDATION

For the reasons stated above,

**IT IS HEREBY RECOMMENDED** that the motion of defendant Antwain Smith to suppress evidence to suppress evidence (Doc. 28) should be denied.

The parties are advised that they have until close of business on November 25, 2008, to file documentary objections to this Report and Recommendation. The failure to file timely documentary objections may result in a waiver of the right to appeal issues of fact.

    /S/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on November 13, 2008.